IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHASE T. BROCKSTEDT and : 
KELLY T. BROCKSTEDT, :
 :
        Plaintiffs, :
 :
   v. : C. A. No. 10-335-MPT
 :
SUSSEX COUNTY COUNCIL, VANCE :
PHILLIPS, GEORGE COLE, JOAN :
DEAVER, MICHAEL VINCENT, and :
SAMUEL WILSON, INDIVIDUALLY :
AND IN THEIR CAPACITY AS :
MEMBERS OF SUSSEX COUNTY :
COUNCIL, :
 :
        Defendants. :

## MEMORANDUM OPINION

Chase T. Brockstedt, Esquire, BIFFERATO GENTILOTTI, LLC, Lewes, Delaware.
Counsel for Plaintiffs.

Daniel A. Griffith, Esquire, WHITEFORD TAYLOR PRESTON, LLC, Wilmington, Delaware.
Counsel for Defendants.

Dated: March 22, 2011
Wilmington, Delaware

THYNGE, Magistrate Judge

## I. INTRODUCTION

The court now considers a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) filed by individual defendants Vance Phillips, George Cole, Joan Deaver, Michael Vincent, and Samuel Wilson ("defendants").[1] The parties completed briefing on these issues on July 19, 2010.[2] For the reasons stated below, the motion is denied.[3]

## II. BACKGROUND

Chase and Kelly Brockstedt ("plaintiffs"), filed this declaratory judgment action against the Sussex County Council ("County Council") and its five members, alleging the improper denial of their application for a conditional use of land permit to construct two 7,500 square foot office buildings for professional, office, medical, and dental uses on three connected lots located in Lewes, Delaware, comprising 1.337 total acres of real property which is zoned AR-1 Agricultural.[4] Plaintiffs' permit application was unanimously recommended for approval by the Planning and Zoning Commission with certain enumerated conditions.[5]

Three hearings were held before County Council in connection with plaintiffs' permit application.[6] A primary issue during the hearings was the number of equivalent

---

[1] D.I. 4.
[2] D.I. 5, 12, 15.
[3] Plaintiffs originally filed their petition for declaratory judgment in the Chancery Court of the State of Delaware. Defendants removed the action to this court. The parties' consent to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 was entered on March 4, 2011. See D.I. 44.
[4] D.I. 1, Ex. A at ¶¶ 5-6.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶¶ 9-13.

2

dwelling units ("EDUs") required for plaintiffs' proposed project in light of the property's inclusion in the West Rehoboth Expansion Area sewer district. Because of the AR-1 zoning, plaintiffs' property is allocated 5.36 EDUs based on the system design assumption of four EDUs per acre. Plaintiffs' project required an additional 6.64 EDUs to satisfy the required one EDU per 1,000 square feet of commercial space. Various County Council members expressed concern over this potential expansion due to its future effect on the current wastewater infrastructure, and additional information was sought from Sussex County Engineering.[7]

In addition, Mayor Ford of the City of Lewes sent a letter to the Chairman of the Planning and Zoning Commission opposing the project based on the aesthetic impact to the surrounding area and community at large. Plaintiffs were not copied on the letter and learned about it from a newspaper article.[8] The letter was not part of the proceedings before the Planning and Zoning Commission and was not part of the initial hearing record before County Council. However, the County Attorney, J. Everett Moore ("Moore"), opened the closed record at a subsequent hearing on plaintiffs' application to receive the Mayor's letter.[9] Although plaintiffs filed a response to both the Mayor's letter and the EDU issue, their response was not brought to the attention of County Council until *after* a formal vote was taken on the permit application, which resulted in its denial by a three to two vote.[10] At that point, Moore allowed a redacted portion of

---

[7] D.I. 1, Ex. A at ¶ 10; D.I. 13 at Tabs 7, 8, 12, 13.
[8] D.I. 1, Ex. A at ¶ 11; D.I. 13 at Tab 10.
[9] D.I. 1, Ex. A at ¶ 18; D.I. 13 at Tab 12 pp. 8-9.
[10] D.I. 1, Ex. A at ¶ 19; D.I. 13 at Tab 14, 15.

3

plaintiffs' response, addressing only the Mayor's letter, to be admitted into the record.[11]
The following is the relevant portion of the transcript of the County Council meeting on February 9, 2009, immediately after the last vote was cast regarding plaintiffs' permit application:

> MR. MOORE: Mr. President, could I address one additional item in regards to this matter.
>
> MR. PHILLIPS: Yes
>
> MR. MOORE: Mr. Lank had indicated that there was an additional letter and would it happen, this was on – even though it wasn't reported to you, it was part of the record.
>
> MRS. DEAVER: Yes it was.
>
> MR. MOORE: The record from Lewes. I made a determination, there was a letter from the town of Lewes, it did not go through the proper channels and get to us properly, however it did get to the Chairman of the Planning and Zoning Commission within time. So I made a ruling that it was going to be allowed as part of the record. In accordance with that, however, Mr. Brockstedt was unable to respond because he didn't see it because it went to a different agency. He sent a response. But when he responded, he responded to many other items besides just the issue of the Lewes letter. I likewise, just as [I] allowed the Lewes letter in, I took his letter. And as you can see I have redacted everything else that he said that did not apply specifically to the Lewes letter, because I did not think likewise it was proper for other items to come in. This too is part of the record.
>
> MRS. DEAVER: Well, if that came in, how come I didn't get a copy of it?
>
> MR. MOORE: It came in to me and I was going to read it into the record after I redacted this.
>
> MRS. DEAVER: I would like to have known about it.
>
> MR COLE: We didn't get a chance.
>
> MRS. DEAVER: When did it come in?

---

[11] D.I. 13 at Tab 15 pp. 10-11 (pages 40-42 of the transcript).

4

MR. MOORE: His letter was December 28th, but I did not receive it at that point. I couldn't tell you when I received it right now. But we did get it. I looked at it to discuss whether – because I didn't want the Council to have it until I determined whether or not it should be part of the public record.

MR. COLE: In the future then this Council should maybe tried [sic] to be considerate of stuff like that because it is important for both parties to be heard. So maybe from now on if we get to this point, folks, that we have a little flexibility here and we are knowledgeable that maybe Marge is holding some information, we should at least hear it and give everybody a fair shake.

MRS. DEAVER: I also have another – there was another case where a letter came in after the fact, after a hearing, and it's in the file. In another application. And I did not get a copy of it, I just heard about it.

MR. MOORE: If one came in on another matter, I am unaware of it.

MR. LANK: We get a lot.

MRS. DEAVER: Yes, a lot of them come in.

MR. LANK: But they are after the record is already closed so we just leave it in the file because it's dated and stamped now, we have a special stamp just for that purpose to show it came in late.

MRS. DEAVER: So it's not made part of the record just because it's in the file.

MR. MOORE: That's correct.

MRS. DEAVER: But you ruled that Mr. Brockstedt's could be made part of the record.

MR. MOORE: Because we did even though –

MRS. DEAVER: I understand.

MR. COLE: The County agency received it. It was just at the wrong department or something.

MR. MOORE: Right.

MR. COLE: But it was sent and received in the proper timeframe.

5

MR VINCENT: I understand.

MR. MOORE: And then I redacted everything else he addressed in the record.

MRS. DEAVER: Thank you.

MR. LANK: Just because it was the first letter that came in from the city of Lewes, so it went directly to Mr. Wheatley. There wasn't any copies sent to Dave or myself, there wasn't any in the file. When you asked the question at the public hearing on the 1st, my answer was no, I hadn't received any. And we found out a day later that Mr. Wheatley had received it, and he had properly assumed that it was a copy of a letter that we had received. But we hadn't received it. We didn't receive it until – he received the day of the hearing or the day before. And we didn't know it until Wednesday or Thursday after.

MR. WILSON: I don't see any purpose of this letter being such a big thrust here of importance because I don't think one of us on this Council on that one letter would have changed our vote.

MR. MOORE: No, I'm not saying –

MR. LANK: I wanted to make sure Ms. Deaver was aware of it because she asked if we had one.

MR. WILSON: Not going to change it. If you said, well, if I had had that letter I would have voted different, then we got something here to argue about. But, all of us have voted the way we're going to vote. So why don't we go on.

MR. PHILLIPS: Well, at this point I think we do need to go on. If this issue becomes an issue based on an appeal be the applicant, we will address it in the future.[12]

Through their petition for declaratory judgment, plaintiffs seek a finding that the denial of their application was not supported by substantial evidence, was arbitrary and capricious, and constituted a denial of their due process rights. Plaintiffs also request the immediate approval of their permit application by County Council, as well as

---

[12] D.I. 13 at Tab 15 pp. 10-12 (pages 40-46 of the transcript).

economic damages, attorneys' fees and costs.

In their motion to dismiss, defendants contend that qualified immunity applies, and therefore, plaintiffs cannot seek monetary damages against them in their individual capacities under either Delaware state tort law or federal civil rights theories.[13]

In response, plaintiffs contend that their claim against defendants, in their individual capacities, centers on the denial of due process rights. Specifically, plaintiffs argue that they were not provided an opportunity to respond to new facts, testimony, and evidence accepted by County Council after the public hearing was closed and a vote was taken on their application without the benefit of their response. Plaintiffs assert that the right to be heard is clearly established and, therefore, government officials, like County Council members in their individual capacities, are not entitled to qualified immunity.

## III. DISCUSSION

### A. Standard of Review

**Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted - Declaratory Judgment**

FED. R. CIV. P. 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[14] "The issue is not whether a plaintiff will ultimately prevail but

---

[13] *Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994).
[14] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

7

whether the claimant is entitled to offer evidence to support the claims."[15] A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[16] While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[17]

To survive a motion to dismiss, plaintiffs' factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[18] Plaintiffs are therefore required to provide the grounds of their entitlement to relief beyond mere labels and conclusions.[19] Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[20] A claim has facial

---

[15] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[16] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[17] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

[18] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[19] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[20] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and

plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[21] Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[22]

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record" when reviewing a motion to dismiss.[23] Rule 12(d) addresses the use of materials which are outside the pleadings in motions to dismiss under Rule 12(b)(6). When such materials are presented, the motion is treated as one for summary judgment. However, certain additional materials may be consider without converting the motion to dismiss into a motion for summary judgment. Moreover, a court is not limited to the four corners of the complaint and may consider "matters incorporated by reference integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case."[24] A party is entitled to notice and a fair opportunity to respond

---

distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).
[21] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).
[22] *Twombly*, 550 U.S. at 563 (citations omitted).
[23] *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted).
[24] *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2004)).**[**This would include taking judicial notice of the public records of a State court action and an appeal therefrom. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12 (b)(6) motion, a court may properly look at public records, *including judicial proceedings*, in addition to the allegations in the complaint." (emphasis added).**]** Further,"exhibits attached to the complaint whose authenticity is unquestioned" may also be considered. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2007).

to any evidence the court might consider in its review of a motion to dismiss. Where a party had such notice, however, it is proper for the court to consider that evidence.[25]

The Declaratory Judgment Act creates a remedy by which federal courts "may declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy."[26] "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[27] The conflict between the parties must be ripe for judicial intervention; it cannot be "nebulous or contingent," but "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."[28]

## B. Analysis - Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[29] A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a

---

[25] *Pension Benefit*, 998 F.2d at 1196-97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.") (internal citations omitted).
[26] 28 U.S.C. § 2201.
[27] *Wyatt v. Gov't. of the V.I.*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).
[28] *Public Serv. Comm'n. v. Wycoff Co.*, 344 U.S. 237, 244 (1952).
[29] *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).

reasonable official would understand that what he is doing violates that right."[30] "[T]he question is whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights."[31]  Qualified immunity, thus, protects government officials from liability for "mere mistakes in judgment, whether the mistake is one of fact or one of law."[32]  The court decides whether the facts alleged, taken in light most favorable to the party asserting injury, show a violation of a constitutional right and whether that right is clearly established.[33]

At this stage of the proceedings, the court cannot conclude that defendants are entitled to qualified immunity.  In the context of land use decisions, procedural due process requires "at a minimum . . . adequate notice to all concerned; a full opportunity to be heard by any person aggrieved by the outcome . . . ."[34]  Specifically, plaintiffs were denied the opportunity to respond to the letter written by Mayor Ford on behalf of the City of Lewes.[35]  Although plaintiffs wrote a responsive letter addressing the issues raised by Mayor Ford, their response was withheld from County Council until *after* a vote occurred on the substance of plaintiffs' permit application.[36]  Plaintiffs further allege that at least one member of County Council voted against plaintiffs' application due, at

---

[30] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[31] *Grant v. City of Pittsburg*, 98 F.3d 116, 121 (3d Cir. 1996).
[32] *Butz v. Economou*, 438 U.S. 478, 479 (1978).
[33] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
[34] *County Council of Sussex County v. Green*, 516 A.2d 480, 481 (Del. 1986); *Green v. County of Sussex*, 1994 Del. Ch. Lexis 147 (Del. Ch. 1994) (holding that homeowners were wrongfully denied opportunity to rebut developer's statements that modified development plan was acceptable).
[35] D.I. 1 at ¶ 18, 19.
[36] *Id.* at ¶ 19.

least in part, to Mayor Ford's opposition letter.[37]  In the court's view, the allegations asserted in plaintiffs' petition for declaratory judgment are sufficient to state a viable claim for the denial of clearly established procedural due process rights, such that defendants have not established, at this time, that they are entitled to qualified immunity.

Additionally, defendants are not entitled to qualified immunity because of the possibility that defendants' conduct, by their handling of plaintiffs' permit application, was arbitrary and capricious.  Landowners have a clearly established right, under the substantive prong of the Due Process Clause, to a rational decision that is not based on arbitrary or irrational considerations.[38]  In order to determine whether qualified immunity applies the court asks two questions: "(1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation."[39]

The first question is answered by applying the appropriate legal standard to the substantive due process claims.  "'The core of the concept' of due process is 'protection against arbitrary action . . . .'"[40]  "[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to

---

[37] *Id.* at ¶ 19.
[38] *DeBlasio v. Zoning Board of Adjustment*, 53 F.3d 592, 601 (3d Cir. 1995).
[39] *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir. 2001).
[40] *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

an abuse of official power that 'shocks the conscience.'"[41]  The *Lewis* court noted that "the measure of what is conscience-shocking is no calibrated yard stick" and "deliberate indifference that shocks in one environment may not be so patently egregious in another."[42]  "The meaning of the [shocks-the-conscience] standard varies depending on the factual context."[43]  If the court determines that a plaintiff has pled a viable claim for the deprivation of a constitutional right, e.g. substantive due process, then the analysis continues on whether the right was clearly established at the time of the alleged violation.

In this case, plaintiffs have pled cognizable claims that they were denied the opportunity to respond to evidence admitted into a previously closed record and, as a result, were also denied a rationally based decision on their conditional land use permit application which was previously approved by a unanimous vote by the Planning and Zoning Commission.  If plaintiffs are able to provide sufficient evidence to prove the 3-2 vote against their conditional use permit application was arbitrary and capricious according to the established standard for substantive due process, then defendants' qualified immunity would fail.  Accordingly, since a motion to dismiss is considered only in context of the allegations asserted in the pleadings,[44] the court denies the motion.

---

[41] *Id.* (quoting *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (en banc)).

[42] *Id.* (quoting *Lewis*, 523 U.S. at 847, 850).

[43] *Id.* at 400.  In this case, the Third Circuit extended the shocks-the-conscience standard to land use disputes.

[44] Additional information beyond the pleadings in plaintiffs' brief appendix (D.I. 13). Said information is part of the public record.

**IV. CONCLUSION**

Based upon the foregoing analysis, defendants' motion to dismiss (D.I. 4) for failure to state a claim upon which can be granted pursuant to FED. R. CIV. P. 12(b)(6) is **DENIED**. An appropriate Order will be entered.