# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CHASE T. BROCKSTEDT and :
KELLY T. BROCKSTEDT, :
:
              Plaintiffs, :
:
v. : C. A. No. 10-335-MPT
:
SUSSEX COUNTY COUNCIL, VANCE :
PHILLIPS, GEORGE COLE, JOAN :
DEAVER, MICHAEL VINCENT, and :
SAMUEL WILSON, INDIVIDUALLY :
AND IN THEIR CAPACITY AS :
MEMBERS OF SUSSEX COUNTY :
COUNCIL, :
:
              Defendants. :

## **MEMORANDUM OPINION**

Chase T. Brockstedt, Esquire, BIFFERATO GENTILOTTI, LLC, Lewes, Delaware.
Counsel for Plaintiffs.

Daniel A. Griffith, Esquire, WHITEFORD TAYLOR PRESTON, LLC, Wilmington, Delaware.
Counsel for Defendants.

Dated: May 11, 2011
Wilmington, Delaware

**THYNGE, Magistrate Judge**

## I. INTRODUCTION

The court now considers cross motions for partial summary judgment pursuant to FED. R. CIV. P. 56(c) filed by Chase and Kelly Brockstedt ("plaintiffs") and Vance Phillips, George Cole, Joan Deaver, Michael Vincent, and Samuel Wilson, individually and in their capacity as members of County Council ("defendants").[1] The parties completed briefing on these issues on February 11, 2011.[2] For the reasons stated below, plaintiffs' motion for partial summary judgment is **GRANTED**, and defendants' motion for partial summary judgment is **DENIED**.[3]

## II. BACKGROUND

Chase and Kelly Brockstedt ("plaintiffs") filed this declaratory judgment action against the Sussex County Council ("County Council") and its five members, alleging the improper denial of their application for a conditional use of land permit to remove an existing vacant dwelling and construct two 7,500 square foot office buildings for professional, office, medical, and dental uses on three connected lots located in Lewes, Delaware, comprising 1.337 total acres of real property zoned AR-1 Agricultural.[4] Plaintiffs' permit application was unanimously recommended for approval by the Planning and Zoning Commission based on the following reasons with several

---

[1] D.I. 35 and 38 respectively.

[2] D.I. 36, 39, 41, 42.

[3] Plaintiffs originally filed their petition for declaratory judgment in the Chancery Court of the State of Delaware. Defendants removed the action to this court. The parties' consent to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 was entered on March 4, 2011. See D.I. 44.

[4] D.I. 1, Ex. A at ¶¶ 5-6.

additional enumerated conditions:

      1) The proposed Conditional Use is generally similar to other uses in the vicinity of the property along Savannah Road.

      2) The project, with the conditions and stipulations placed upon it, will not have an adverse impact on the neighboring properties, community or traffic.

      3) The project is consistent with the County Comprehensive Plan Update and is in the Environmentally Sensitive Developing District which permits the proposed use.

      4) The property has frontage on two State owned and maintained roadways. Ritter Road adjacent to the property is State owned and maintained.

      5) The use as offices benefits the health, safety and welfare of Sussex County residents, and will provide professional and medical offices in a convenient location along Savannah Road near the City of Lewes and Beebe Hospital.

      6) This recommendation for approval is subject to the following conditions and stipulations:

         a. There will only be one (1) lighted sign on the premises that shall not exceed 32 square feet on each side.

         b. Any security lights shall only be installed on the buildings and shall be screened so that they do not shine on neighboring properties or roadways.

         c. As proposed by the Applicant, the hours of operation shall be limited to between 7:00 a.m. and 7:00 p.m., Monday through Saturday.

         d. A solid vinyl fence shall be installed along the rear boundary of the property. The type and height of the fence shall be depicted on the Final Site Plan.

         e. There shall be no more than two (2) 7,500 square foot office buildings permitted on the site.

         f. The Applicant must comply will all DelDOT requirements concerning the entrance and roadway improvements.

         g. The use shall be limited to business and professional uses, including but not limited to medical offices, dental offices, lawyers, accountants, insurance offices, etc. There shall not be any contractor's offices or uses that primarily involve retail sales.

         h. The Final Site Plan shall include a landscape plan for the property.

         i. The site plan shall be subject to the review and approval of the Planning and Zoning Commission.[5]

---

[5] D.I. 36, Ex. 1, Tab 16. "Motion by Mr. Burton, seconded by Mr. Johnson, and carried unanimously to forward this application to the Sussex County Council with the

Subsequently several hearings were held before County Council in connection with plaintiffs' permit application.[6] The primary issue during the hearings was the number of equivalent dwelling units ("EDUs") required for plaintiffs' proposed project in light of the property's inclusion in the West Rehoboth Expansion Area sewer district. Because of the AR-1 zoning, plaintiffs' property is allocated 5.36 EDUs based on the system design assumption of four EDUs per acre. Plaintiffs' project required an additional 6.64 EDUs to satisfy the required one EDU per 1,000 square feet of commercial space. Various County Council members expressed concern over this potential expansion due to its future effect on the current wastewater infrastructure, and additional information was sought from Sussex County Engineering.[7] The Director of Utility Planning proposed that "if approved, the project should pay a fee towards future upgrades to the transmission and/or treatment system. This could be perhaps two times the impact fee for all density above what has been allotted or some other amount as approved by council."[8] This recommended procedure is not uncommon in Sussex County.

Another consideration was the concern from the neighboring housing development ("Covey Creek") regarding increased traffic. Substantial efforts were taken by plaintiffs, beginning in September 2007, to inform the residents of Covey Creek, individually and through the Board of Directors of the Covey Creek Homeowners

recommendation that the application be approved for the reasons and with the conditions and stipulations stated. Motion carried 4 – 0." Id.

[6] Id. at ¶¶ 9-13.
[7] D.I. 1, Ex. A at ¶ 10; D.I. 13, Tabs 7, 8, 12, 13.
[8] D.I. 36, Ex. 1, Tab 23 at 6.

4

Association ("HOA"), about the project.[9] The only issue was that the residents and the

HOA desired an entrance to the property from Savannah Street, the main road through

the area.[10] Plaintiffs, however, could not satisfy that matter because of a decision from

the Delaware Department of Transportation ("DelDOT"). The following is an excerpt

from a letter dated April 3, 2008 from plaintiffs to the HOA:

> Based upon our earlier conversations and correspondence, I am
> well aware that your Board only agreed to support my project if the
> entrance was on Savannah Road only and there was no entrance on
> Ritter Road/Dove Drive. On January 7, 2008, I met with John Fiori and
> Mark Cote of [DelDOT] to discuss the Savannah Road entrance. At our
> meeting, I provided them with sketches and a proposed site plan showing
> 1) an entrance from Savannah Road only and 2) as an alternative, a right-
> in-only from westbound Savannah Road with a secondary entrance on
> Ritter Road/Dove Drive. Both Mr. Fiori and Mr. Cote were firm in their
> position that DelD[OT] would not permit an entrance *at all* from Savannah
> Road.
>
> * * *
>
> As a result of DelD[OT]'s decision regarding the entrance and my
> assumption that your association would oppose a conditional use
> application with an entrance on Ritter Road/Dove Drive, I have decided to
> significantly reduce the size of the project. Specifically, I am now
> proposing two smaller buildings . . . . The purpose of reducing the size of
> the project is my good faith attempt to garner the support of your Board
> and residents, and the support of the surrounding property owners. The
> two smaller buildings will fit in better with the other structures on
> Savannah Road. It also will allow me to save nine large trees on the
> property and will retain more open space.[11]

Because of the decision by DelDOT, plaintiffs significantly reworked the project

to address the potential increase in traffic and to maintain the well being of the

_____

[9] D.I. 36, Ex. 1 at Tab 5.

[10] *Id.*

[11] *Id.* (emphasis added).

5

surrounding area. In early 2008, a traffic study was initially required, but was

subsequently withdrawn because the amount of traffic necessary to mandate a study

would not be generated by the project.[12] Furthermore, by mid 2009, plaintiffs garnered

signatures from property owners in the surrounding area in support of the project.[13] In

fact, only one resident from Covey Creek ever attended any public hearing to voice her

concern about possible increased traffic. The following excerpt from a meeting of the

Sussex County Council hearing on December 1, 2009 provides the entirety of the

dialogue between that resident and defendants:

> KATHLEEN O'HANLON: I am Kathy O'Hanlon. I wrote letters and I do
> want to express more of my concern. I thank you for the opportunity. I've
> made some pictures to help explain a little bit. I'll share them. My
> concern is the entrance on this road. And I want to clear up something.
> This road is Dove Drive. I don't know – I think the confusion came when
> the state started putting up new signs. You'll see my picture right there.
> That was taken right at Savannah Road and the corner . . . and it says
> Dove Drive. The entrance, the main entrance, for Covey Creek, I think it's
> the right-of-way, but it has a big sign and a big fence that says Covey
> Creek, right there. So I just want to make that kind of clear why I'm
> concerned. This has 88 some homes. We come in and out of there. And
> two years ago it was presented to us, it was considered a small property
> at the time, I thought, okay, maybe that's not too big a deal. Then I
> started worrying and I'm worried, and I saw that sign and I'm worried
> about the traffic impact. And I'm feeling now like, well, I better speak up
> now or forever hold my peace. So [I] want to let you hear my concerns. I
> have lived in Covey Creek for 30 years. It's a quiet neighborhood, there's
> very little traffic back here. We have very little traffic coming in and out.
> What, 88 homes, two cars, you can do the count on that. But the
> intersection of Savannah Road is a tough one, and the traffic scope has
> increased over the years. They have even lowered the speed limit on
> Savannah Road. It's now 30 when it used to be 45. So, it's even another
> indication of the traffic that we have there. When you're coming out of
> Lewes you come up a hill. There is a telephone pole right at that corner,
> which I've noted in my pictures. You have to make almost a blind right

---

[12] D.I. 36, Ex. 1 at Tab 6.
[13] D.I. 36, Ex. 1 at Tab 27.

turn into that development. So it's kind of tricky when you come in. When you come out, you know, again, you got the same thing, get around that telephone pole. If you're making a left-hand turn, let me tell you about all the people that fly, even though it' 30, they fly around me to get around me and that's why we have the accidents at the intersection. I am concerned about the traffic impact, I don't know what the power of County Council can be, but if we do have to pass this, is there any way to let the entrance stay on Savannah Road.

MR. COLE: Let me throw this at you. Would it be more dangerous if they had an entrance and then immediately almost next to the entrance to -

KATHLEEN O'HANLON: Well, there is [sic] two entrances.

MR. COLE: Probably to DelDOT it's more dangerous to throw another entrance out there and plus your entrance, and so you would have a lot of traffic coming and going which actually might increase the danger level.

KATHLEEN O'HANLON: There are two entrances now to the same property on Savannah Road, right now.

MR. COLE: Right, But there ain't [sic] any businesses going on there. It will change the use.

KATHLEEN O'HANLON: So that's why I'm concerned adding business there.

MR. COLE: The other question would be then is the road in that section of whatever it's called, Dove or Ritter.

KATHLEEN O'HANLON: Dove.

MR. COLE: Is it state maintained[?]

KATHLEEN O'HANLON: Yes.

MR. COLE: So it is state maintained.

KATHLEEN O'HANLON: And so is Covey Creek state maintained.

MR. COLE: All inside. Been all dedicated. You lose a lot of your control when you give up to the state.

KATHLEEN O'HANLON: I know.

MR. COLE: So that is a state road. So all the taxpayers of this state are subsidizing, you know, everything you've got there. So it's difficult for us to override them. In my mind I would think that another entrance on Savannah Road, if they could eliminate one, it would be much safer than adding another one on there. I can see what DelDOT is looking at. Plus it is a state road so they have actually got the jurisdiction onto that road. It's a tough one but I do understand.

KATHLEEN O'HANLON: Here's a map of Covey Creek just for your information.

MRS. DEAVER: There are two entrances you say.

MR. COLE: Not to Covey Creek.

MRS. DEAVER: No, on this property, to this property.

KATHLEEN O'HANLON: For those present properties, yes, there are two entrances.

MRS DEAVER: Where are they, on Savannah Road[?]

KATHLEEN O'HANLON: Yes.

MRS. DEAVER: And Dove Road, whatever.

KATHLEEN O'HANLON: They are on Savannah Road. This needs to be propped up. The two entrances at the present time, one is about here and one is pretty close to that.

MRS. DEAVER: Okay. So they couldn't be made into like a horsehoe.

MR. COLE: It could, but -

KATHLEEN O'HANLON: One way in and another way out. That's a possibility.

MRS. DEAVER: I don't know if it would help.

KATHLEEN O'HANLON: That's a lot of parking.

MR. MOORE: Are there – is there anyone else that would like to speak in opposition[?] If not, again, is there anyone else that would like to speak in opposition[?] Seeing none, Mr. President, I believe the public hearing

should be closed at this point.[14]

In late 2009, Mayor Ford of the City of Lewes sent a letter to the Chairman of the Planning and Zoning Commission opposing the project based on the aesthetic impact to the surrounding area and community at large. Plaintiffs were not copied on the letter and learned about it from a newspaper article.[15] The letter was not part of the proceedings before the Planning and Zoning Commission and was not part of the initial hearing record before County Council. However, the County Attorney, J. Everett Moore ("Moore"), opened the closed record at a subsequent hearing on plaintiffs' application to

---

[14] D.I. 36, Ex. 1, Tab 18 at 7-9 (at 28-34 of the transcript). Subsequent dialogue between plaintiffs and defendants occurred to clarify the name of the road leading from Covey Creek to Savannah Road. Apparently there was a recent name change for a small section of the road connecting the entrance/exit from Covey Creek to Savannah Road. For purposes herein, Ritter Road/Dove Road are considered to be the same road. Additionally, Chase Brockstedt and Deaver, had a brief exchange regarding the two current entrances on Savannah Road that were referenced by O'Hanlon. Brockstedt stated,

> It's just one sort of horseshoe driveway for the resident's [of a private home currently on the property]. What Mr. Cole was saying was exactly correct, when we met with DelDOT and I said I would love to have this entrance off Savannah Road. They shook their head and they said, with that intersection right there that would make that whole area, you know, more congested, less safe, and so we want it on Ritter Road as far away from Savannah as possible.

To which Deaver responded,

> Yeah, we have a lot of that going on. DelDOT is doing that in a lot of different places and the people that live in those communities behind these proposed rezonings or B-1's or conditional uses, they don't want it on their road. So we have a lot of that.

*Id.* at 10 (at 37-38 of the transcript).
[15] D.I. 1, Ex. A at ¶ 11; D.I. 13, Tab 10.

receive the Mayor's opposition letter.[16]  Although plaintiffs filed a response to both the

Mayor's letter and the EDU issue, their response was not brought to the attention of

County Council until *after* a formal vote was taken, which denied the permit application

by a three to two vote.[17]  At that point, Moore allowed a redacted portion of plaintiffs'

response, addressing only the Mayor's letter, be admitted into the record during the

County Council meeting on February 9, 2009, immediately after the last vote was cast

on the permit application.[18]

The following action by defendants is of particular interest.  In June 2010, a mere

four months after denying plaintiffs' application, they approved a separate, yet strikingly

similar, application for conditional use for another commercial project along Savannah

Road ("the SDPT Project").  The relevant portion of the minutes of that meeting are

noted below, with specific emphasis, on those comments pertinent to the issues herein:

> Lester Moyer and Art Abbott were present on behalf of the application with
> James Fuqua, Attorney, and Roger Gross of Merestone Consultants.  Mr.
> Fuqua stated that the application is for a physical therapy office; that the
> site is located on the north side of *Savannah Road*; that J&T Properties
> owns the land and will construct the proposed building and lease it to
> Southern Delaware Physical Therapy (SDPT); that SDPT has been in
> business for 20 years and has six locations in Delaware; that *the site is
> improved with a dwelling and a garage that will be removed*; that there are
> no wetlands on the site; that the *proposed building will be a 2-story
> building with a residential appearance*; that the total floor area would be
> 6,506 square feet; that business hours are proposed to be 7:30 a.m. to
> 7:30 p.m. Monday through Friday; *that the entrance to the site will be
> located near the rear of the site on the DelDOT easement for the future
> realignment of Old Orchard Road*; *that the site will have no direct access
> onto Savannah Road*; *that a Traffic Impact Study was not required*; that
> Tidewater Utilities will serve the project; that the County will provide sewer

[16] D.I. 1, Ex. A at ¶ 18; D.I. 13, Tab 12 at 8-9.
[17.] D.I. 1, Ex. A at ¶ 19; D.I. 13, Tabs 14, 15.
[18] D.I. 13, Tab 15 at 10-11 (at 40-42 of the transcript).

service; that the *owners are aware that they may be required to participate in upgrades to the sewer system*; that storm water management would comply with County and State regulations; that 27 parking spaces are proposed and are to be located both in the front, side and rear yards; that a screened dumpster would be located in the rear corner of the property; that the site would have landscaping or fencing along the north and east boundaries; that *the proposed use is consistent with the zoning and existing uses in the area, which are predominantly business and medical office uses*; and that the proposed use would be the best use of the property.

*Mr. Cole stated that the application is requesting six times the recommended allocation for sewer* and that the comments of the Sussex County Engineering Department reference that wastewater capacity is not available since there are deficiencies.

Mr. Fuqua referenced the Conditional Use in the area that was recently denied and he stated that it was not only due to sewer. He stated that a planning area is based on assumptions and not necessarily exactly how things will be; that an assumption is only an assumption; that *some projects were allocated 12 EDUs but will use significantly less; that some EDUs won't be used, i.e. some land in the area is owned by the State and no EDUs will be utilized on that ground; and that there has to be some flexibility*.

Michael Izzo, County Engineer, stated that, *even though the application is for six times the EDU allocation, it is still only a total of six EDUs, which is not substantial*. He also stated that the Engineering Department knows that there are lines down-gradient to this application site that have to be upgraded regardless of the approval or disapproval of this proposed project.[19]

The day after County Council approved this application, plaintiffs sent an email

to Mayor Ford to inquire if the City of Lewes opposed or supported this project. Mayor

Ford responded as follows: "Chase, hope you are well also. You are correct, the City

did not take any position on that request."[20]

---

[19] D.I. 36, Ex. 1, Tab 32 at 18-19. The application was approved as follows: Deaver, NAY; Cole, NAY; Vincent, YEA; Phillips, YEA; Wilson, Yea.

[20] D.I. 36, Ex. 1, Tab 33. The Mayor's entire response to plaintiffs' inquiry is contained in the above quote.

Through their declaratory judgment action, plaintiffs seek a finding that the denial of their application was not supported by substantial evidence, was arbitrary and capricious, and constituted a denial of their substantive due process rights. Plaintiffs also request the immediate approval of their permit application by County Council, as well as economic damages, attorneys' fees, and costs.

In their current cross motion for partial summary judgment, plaintiffs contend that their claim against defendants centers on the denial of due process rights. Specifically, plaintiffs assert that the decision by defendants to deny their conditional use permit violated substantive due process because it was arbitrary and capricious, and not supported by substantial evidence in the public record.[21]

In their present cross motion for partial summary judgment, defendants contend that the decisions made by County Council were neither arbitrary nor capricious, and were based on substantial evidence articulated on the record.[22]

## III. DISCUSSION

### A. Standard of Review

#### Motion for Summary Judgment

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[23] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party

---

[21] D.I. 36 at 2.
[22] D.I. 39 at 3.
[23] FED. R. CIV. P. 56(c)(2).

12

who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[24] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[25] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[26] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[28] However, a party may move for summary judgment with or without supporting affidavits.[29] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[30]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a

---

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[25] *Id.* at 323.
[26] *Id.*
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[28] *Celotex*, 477 U.S. at 323.
[29] *Id.*
[30] *Id.* at 325.

genuine issue for trial."[31]  If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[32] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[33]  At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[34]  Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[35]  The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[36]

This standard does not change merely because there are cross-motions for summary judgment.[37]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[38]

Moreover, "[t]he filing of cross-motions for summary judgment does not require the

---

[31] FED. R. CIV. P. 56(c).
[32] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[33] *Anderson*, 477 U.S. at 248.
[34] *Id*. at 249.
[35] *Id*.
[36] *Id*. at 250.
[37] *Appleman's v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[38] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

14

.

court to grant summary judgment for either party."[39]

The Declaratory Judgment Act creates a remedy by which federal courts "may declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy."[40] "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[41] The conflict between the parties must be ripe for judicial intervention; it cannot be "nebulous or contingent," but "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."[42]

## The Decision of the County Council

This court treads lightly into the area of reviewing decisions made by local governing bodies, which is reserved for only the most egregious instances. With regard to conditional land use permits in Sussex County, Article XXIV, § 115-171 controls. A decision rendered by County Council is reviewed by the court to determine if it was made based on substantial evidence on the record and not arbitrary and capricious.[43] Landowners have a clearly established right, under the substantive prong of the Due

---

[39] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

[40] 28 U.S.C. § 2201.

[41] *Wyatt v. Gov't. of the V.I.*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

[42] *Public Serv. Comm'n. v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

[43] *Steen v. County Council of Sussex County*, 576 A.2d 642, 648 (Del. Ch. 1989).

15

Process Clause, to a rational decision that is not based on arbitrary or irrational considerations.[44]

## B. Analysis

The decision by County Council to deny plaintiffs' conditional land use permit fails on four fronts: the issues surrounding the EDUs, the non-issue of future traffic impact, the opposing position of the City of Lewes, and the subsequent approval the SDPT Project, a nearly identical conditional use permit a mere four months after the denial of plaintiffs' application. Additionally, the record evidences that along the same stretch of Savannah Road (from the westerly boundary of the City of Lewes to Old Orchard Road), twenty-seven conditional use permits have been submitted since June 24, 1980, and all previous applications were approved. The only request rejected was plaintiffs' permit.[45]

EDUs have been an issue in Sussex County for a long time. Defendant Cole so admitted in the minutes of the County Council meeting of December 8, 2009, during a very heated discussion. In response to a question about how additional EDUs are currently granted during the conditional use application process, he responded:

If one of the [zoning] commissioners don't ask an engineering question, then it just goes flying through and they don't go into it. All I could tell you is I've focused on these for years, I've seen problems, we got problems. What I'm trying to say with – *going into the future here this Council ought to follow the plan*. Follow good planning. That's all we've heard about, good planning. Let's do it. Let's try it. I would like to see Council for once sit here and not do it case by case basis, because you just get in trouble going on these case by case basis. You double here. Next guy, how come we can't double the next guy. Is it fair to the next applicant if we

---

[44] *DeBlasio v. Zoning Board of Adjustment*, 53 F.3d 592, 601 (3d Cir. 1995).
[45] D.I. 36, Ex. 1, Tab 28.

don't double his[?][46]

Earlier in the same proceeding, Cole expressed the following concern about granting

additional EDUs if a fee is paid by the applicant towards future upgrade of the system to

which the permit applies:

> In other words[,] we will *arbitrarily* listen to some guy and maybe a certain
> person will be there we know real well and gets a better rate. In other
> words[,] we will be all over the place. We should be consistent with this. .
> . . Otherwise we're going to have no consistent history of dealing with
> different applicants equally and fairly as they come in front of us.[47]

Cole's remarks acknowledge and identify the random approach defendants

employed in the determination of plaintiffs' permit application, which is the essence of

arbitrary and capricious. As noted by defendants, "an arbitrary decision is one 'which is

unreasonable or irrational, . . . which is unconsidered or which is willful and not the

result of a winnowing or sifting process.'"[48] Inconsistency in the application of rules and

regulations directed to the granting or denying of a conditional use permit may be

evidence of an arbitrary decision. Similarly, the absence of standards, objective

criterion or an established plan in that regard may result in a violation of substantive

due process. An ad hoc approach to land use issues based on a subjective analysis is

an arbitrary exercise. As noted in a recent, similar case, where County Council's denial

of a conditional land use permit was overturned by the Delaware Chancery Court:

> Although some of the considerations raised . . . are rational considerations
> for the formulation of land use policy, they are considerations that the
> County Council must address in a legislative fashion and not in an
> arbitrary fashion that subjects some property owners like [plaintiffs] to

[46] D.I. 36, Ex. 1, Tab 22 at 11 (at 42-43 of the transcript) (emphasis added).
[47] D.I. 36, Ex. 1, Tab 22 at 3 (at 11-12 of the transcript) (emphasis added).
[48] *Willdel Realty, Inc. V. New Castle County*, 270 A.2d 174, 178 (Del. Ch. 1970).

17

unwritten, subjective restrictions that the Council is not willing to impose on similarly situated property owners.[49]

A similar scenario is present in the instant matter, where plaintiffs' application was denied by County Council (after having been unanimously approved by Planning and Zoning), while another applicant was approved four months later, despite needing six times the allotted EDUs (the SDPT Project). The rationale of County Council for denying plaintiffs' application based on the need for additional EDUs appears arbitrary and capricious, particularly in light of its approval of the subsequent SDPT Project.[50]

Moreover, there is no substantial evidence on the record supporting a denial based on possible increased traffic. Again, as emphasized by defendants, "[s]ubstantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[51] The only "evidence" of increased traffic came from the unsupported testimony of a single resident (O'Hanlon) of a neighboring housing development (Covey Creek) of eighty-eight homes. Her opinion about increased traffic and its potential impact generated by plaintiffs' project is not substantial evidence.[52] Further, O'Hanlon's concern appears primarily directed to the location of the entrance of the project.[53]

---

[49] *Gibson v. Sussex County Council*, 877 A.2d 54, 57 (Del. Ch. 2005).

[50] See comments herein by Council members Deaver and Cole.

[51] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981).

[52] Plaintiffs' permit request is for professional offices and not retail establishments, where heavier traffic conditions would likely result. Moreover, although a traffic study was initially required, it was withdrawn because any traffic resulting from the proposed project was considered insufficient to warrant such a study.

[53] During her presentation, O'Hanlon specifically stated that her concern was the entrance and inquired whether it could be located on Savannah Road, rather than on Ritter Road/Dove Road.

18

The entrance to Covey Creek from Savannah Road is Ritter Road/Dove Road, a state maintained street, controlled by DelDOT. Despite plaintiffs' considerable efforts to obtain approval for an entrance/exit to the project from Savannah Road, DelDOT refused. A similar scenario occurred regarding the SDPT Project which defendants subsequently approved after denying plaintiffs' application. The minutes from the June 2010 meeting of County Council addressing the SDPT request noted: "the entrance to the site will be located . . . [on] Old Orchard Road; . . . the site will have no direct access onto Savannah Road; . . . a Traffic Impact Study was not required." These conditions are nearly identical to those of the instant application which was denied. Therefore, the purported reasons by defendants for denying plaintiffs' application because of potential future impact due to traffic generated by the their project are not supported by substantial evidence, making denial based on this issue arbitrary and capricious.[54]

The letter written by Mayor Ford to the Planning and Zoning Commission, later circulated to County Council, is particularly troublesome for several reasons. First, it was never sent to plaintiffs and they only learned of it through the media. Second, the letter was never made part of the proceedings before the Planning and Zoning Commission, nor was it part of the record of the original proceedings before County Council. Only after Moore, County Council's attorney, opened the closed record, in a subsequent proceeding, was the letter presented and considered by defendants.[55] Third, Mayor Ford's reason for vehemently opposing the project was solely because the

[54] See comments herein by Council members Deaver and Vincent.
[55] Claims of violation of procedural due process are raised in Count II of plaintiffs' complaint, which are not at issue in the current cross motions for partial summary judgment.

19

existing structure (a dwelling, in disrepair, built in the 1940's) would be demolished. Yet curiously, a mere four months later, no action was taken by the City of Lewes in relation to the SDPT conditional use application which involved removal of a dwelling and a garage.

The Mayor's letter does not constitute substantial evidence that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Therefore, reliance on this letter to deny plaintiffs' application renders that decision arbitrary and capricious.[56]

Finally, similarities between plaintiffs' and the SDPT application are significant. Despite the request in both conditional use permits for additional EDUs, the outcomes are divergent. Michael Izzo, the County Engineer, advised that, even though the SDPT application required a substantial increase in the EDU allocation, the total requested was not substantial. Izzo also noted that the Engineering Department recognized that upgrades to the current system would be necessary regardless of the approval or disapproval of the SDPT Project.[57] Plaintiffs' application also sought an increase in the allotted EDUs. A similar analysis, along with equivalent information was provided by the County Engineering Department to County Council during plaintiffs' application process. Despite having like recommendations from the County Engineering Department which addressed the increased EDUs, plaintiffs' application was denied

---

[56] Only one member of County Council, Deaver, noted the reasoning of the letter as a basis to deny plaintiffs' application. She represents Northeastern Sussex County which includes the City of Lewes.

[57] D.I. 36, Ex. 1, Tab 32 at 18-19. The SDPT application was approved as follows: Deaver, NAY; Cole, NAY; Vincent, YEA; Phillips, YEA; Wilson, Yea.

while the SDPT permit was granted. Therefore, defendants' denial of plaintiffs' application based on the need for additional EDUs is arbitrary and capricious, particularly in light of its approval of the subsequent SDPT Project requiring a similar increase of EDUs. Nothing has been presented that distinguishes plaintiffs' application from the SDPT permit request, nor from the other twenty-seven preceding applications that were previously approved. In the instant matter, plaintiffs have shown that they were denied a rationally based decision on their conditional land use permit application which was previously approved by a unanimous vote by the Planning and Zoning Commission. County Council's 3-2 vote against plaintiffs' conditional use permit application was arbitrary and capricious according to established standards. No substantial evidence has been presented which supports defendants' denial of plaintiffs' application. In the absence of a genuine issue of material fact, defendants' motion for partial summary judgment is denied, while plaintiffs' motion for partial summary judgment is granted, as to Count I. Therefore, the February 9, 2010 decision denying plaintiffs' application for conditional land use is invalid as arbitrary and capricious. The unanimous decision of the Planning and Zoning Commission on November 19, 2009 should be adopted with the inclusion of appropriate measures regarding the granting of additional EDUs for plaintiffs' project.[58]

## IV. CONCLUSION

[58] *Gibson*, 877 A.2d at 79-80. Adoption of the Planning and Zoning Commission's decision is an appropriate and available remedy. "[W]here the County Council has taken its best shot at justification and essentially missed the mark, an injunction compelling a grant of the conditional use permit is justifiable." *Id.* "In these circumstances, the appropriate remedy is an order requiring the County to grant [plaintiffs'] a conditional use on the terms specified by the Zoning Commission." *Id.*

21

Based upon the foregoing analysis, plaintiffs' motion for partial summary judgment (D.I. 35) pursuant to FED. R. CIV. P. 56(c) is **GRANTED**, and defendants' motion for partial summary judgment (D.I. 38) pursuant to FED. R. CIV. P. 56(c) is **DENIED**. An appropriate Order will follow.[59]

---

[59] This decision does not address whether plaintiffs are entitled to economic damages, attorneys' fees or costs.